**2008 BNH 001**
_____

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:                                                                                                Bk. No. 07-11366-JMD
                                                                                                      Chapter 7
Tina Mae Pageau,
            Debtor


*Stanley H. Robinson, Esq.*
*Franklin, New Hampshire*
*Attorney for Debtor*

*Ann Marie Dirsa, Esq.*
*Manchester, New Hampshire*
*Attorney for United States Trustee*


## MEMORANDUM OPINION

### I. INTRODUCTION

The Court has before it the Motion of United States Trustee for Order Dismissing Case under 11 U.S.C. § 707(b)(2) or 11 U.S.C. § 707(b)(3) (Doc. No. 17) (the "Motion"). After a preliminary hearing on November 5, 2007, the Court denied the Motion in part with respect to certain claims of the United States Trustee (the "UST") under 11 U.S.C. § 707(b)(2)[1] (Doc. No. 23). The Court held a further hearing on January 8, 2008, on the remaining issue under § 707(b)(2), i.e., whether the Debtor has rebutted the presumption of abuse by establishing special circumstances warranting the inclusion of the Debtor's monthly student loan obligation of $170.00 (the "Student Loan") listed on line 56 of Form B22A (the "Means Test Form") as an

---

[1] In this opinion the terms "Bankruptcy Code," "section," or "§" refer to title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8 ("BAPCPA").

additional expense for which there is no reasonable alternative. The Court finds that the Debtor has not rebutted the presumption of abuse.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. FACTS

On June 29, 2007, the Debtor filed a chapter 7 bankruptcy petition. On August 13, 2007, the UST filed a statement indicating the Debtor's case should be presumed to be an abuse under § 707(b), and on September 10, 2007, the UST filed the Motion seeking to dismiss the Debtor's case under § 707(b)(2) or (b)(3). The Debtor filed a statement under oath to rebut the presumption of abuse as well as an objection to the Motion. As amended by the Debtor, and in accordance with rulings made by the Court at the preliminary hearing on November 5, 2007, the Means Test Form presently shows the Debtor's monthly disposable income on line 50 as $240.62. Monthly disposable income in that amount results in a presumption of abuse as the disposable income the Debtor could pay through a five-year plan totals $14,427.20 as shown on line 51 of the Means Test Form, which is more than $10,950.00, the amount necessary to establish a presumption of abuse pursuant to § 707(b)(2)(A)(i).[2]

---

[2] If a debtor's monthly disposable income is less than $109.58 (i.e., less than $6,575.00 over sixty months), the presumption of abuse does not arise. If a debtor's monthly disposable income is equal to or exceeds $182.50 (i.e., at least $10,950.00 over sixty months), the presumption of abuse arises. If a debtor's monthly disposable income is between $109.58 and $182.50, the presumption arises if that amount, over sixty months, is sufficient to pay at least 25% of the debtor's nonpriority unsecured debt. 11 U.S.C. § 707(b)(2)(A)(i); see Eisen v. Thompson, 370 B.R. 762, 765-66 (N.D. Ohio 2007).

2

The parties agree that the Debtor obtained student loans through the New Hampshire Higher Education Assistance Foundation during the period of January 1994 through May 1998, totaling $14,875.00. In September 2001, the Debtor was able to consolidate these loans into the Student Loan at an interest rate of 6.79%. The current principal balance on the Student Loan is $13,449.16, and the Debtor's monthly payment on the Student Loan is $170.00. The remaining term of the Student Loan exceeds sixty months. The parties agree the Student Loan is nondischargeable pursuant to 11 U.S.C. § 523(a)(8), and payments on the Student Loan cannot be deferred. The Debtor listed the Student Loan payment on line 56 of the Means Test Form as an additional monthly expense.

## III. DISCUSSION

The Debtor seeks to rebut the presumption of abuse arising under § 707(b)(2)(A) on the grounds that the Student Loan constitutes a "special circumstance" within the meaning of § 707(b)(2)(B). The Bankruptcy Code specifically provides at § 707(b)(2)(B):

> (i) In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call to active duty in the Armed Forces, to the extent such special circumstances . . . justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.
>
> (ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide (I) documentation for such expense or adjustment to income; and (II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.
>
> (iii) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.

> (iv) The presumption of abuse may only be rebutted if the additional expenses or adjustments to income referred to in clause (i) cause the product of the debtor's currently monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv) of subparagraph (A) when multiplied by 60 to be less than the lesser of (I) 25 percent of the debtor's nonpriority unsecured claims, or $6,575, whichever is greater; or (II) $10,950.

11 U.S.C. § 707(b)(2)(B).  Section 707(b)(2)(B) sets forth both procedural and substantive requirements.  In re Haman, 366 B.R. 307, 312 (Bankr. D. Del. 2007).

### A.  Procedural Requirements for Establishing Special Circumstances

The procedural requirements for establishing special circumstances are set forth in § 707(b)(2)(B)(ii), (iii), and (iv), and they require a debtor (1) to "itemize" each additional expense or income adjustment by setting forth the nature of the suggested adjustment, its amount, and its impact on the debtor's finances and the means test calculation; (2) to provide "documentation" of the additional expense or income adjustment; (3) to provide a "detailed explanation" of the "special circumstances" that make the additional expense or income adjustment "necessary and reasonable;" and (4) to "attest under oath" to the accuracy of the information the debtor provides.  See In re Littman, 370 B.R. 820, 830 (Bankr. D. Idaho 2007); Haman, 366 B.R. at 312.

The Debtor has satisfied the procedural hurdles of § 707(b)(2)(B).  Through her verified statement of rebuttal, the parties agreed statement of facts which had attached to it copies of the Debtor's student loan applications and promissory notes, and her offer of proof at the hearing, the Debtor provided the Court with sufficient documentation demonstrating she is liable for the Student Loan in the amount of $170.00 per month.  In addition, she explained that the Student Loan expense is necessary and reasonable in her view because the Student Loan is nondischargeable and she will be required to make ongoing payments until the Student Loan is paid in full.  The Debtor further demonstrated that if she were allowed to deduct the Student

Loan expense of $170.00 from her current monthly income of $240.62, her monthly disposable income would be reduced to $70.62, which when multiplied by sixty totals $4,237.20, or less than $6,575.00, the threshold amount for finding a presumption of abuse.

### B.  Substantive Requirements for Establishing Special Circumstances

The substantive requirements of § 707(b)(2)(B) are set forth in § 707(b)(2)(B)(i), and they require a debtor (1) to demonstrate "special circumstances" that justify the additional expense or income adjustment; and (2) to demonstrate that there is "no reasonable alternative" to making the additional expense or income adjustment.  Haman, 366 B.R. at 312.  The term "special circumstances" is not defined in the Bankruptcy Code.  In re Martin, 371 B.R. 347, 352 (Bankr. C.D. Ill. 2007).  Rather, the statute provides two examples of special circumstances:  a serious medical condition and a call or order to active duty in the Armed Forces.  11 U.S.C. § 707(b)(2)(B)(i).  Courts confronting the issue of what constitutes special circumstances have concluded that the examples listed in the statute are non-exclusive and merely illustrative.  In re Vaccariello, 375 B.R. 809, 813 (Bankr. N.D. Ohio 2007); In re Templeton, 365 B.R. 213, 216 (Bankr. W.D. Okla. 2007); In re Armstrong, No. 06-31414, 2007 WL 1544591, at *2 (Bankr. N.D. Ohio May 24, 2007).

Further, courts have held that determining whether special circumstances exist is a fact-specific determination that should be made on a case-by-case basis.  In re Robinette, No. 8-06-10585 SA, 2007 WL 2955960, at *4 (Bankr. D.N.M. Oct. 2, 2007); In re Turner, 376 B.R. 370, 378 (Bankr. D.N.H. 2007); Vaccariello, 375 B.R. at 813; In re Knight, 370 B.R. 429, 437 (Bankr. N.D. Ga. 2007); In re Pampas, 369 B.R. 290, 298 (Bankr. M.D. La. 2007); Templeton, 365 B.R. at 216.  "Congress gave courts broad discretion to determine whether a particular set of

5

facts constitute special circumstances." Pampas, 369 B.R. at 298; see Templeton, 365 B.R. at 216.

Courts disagree whether the language of the statute requires the circumstances to be unanticipated, unforeseeable, or outside the debtor's control. Compare Robinette, 2007 WL 2955960, at *4 ("Nothing in the language of the statute requires that the circumstances be an act outside of a debtor's control. . . . Nor must the special circumstances be unanticipated."); Turner, 376 B.R. at 378 ("[T]he court declines to adopt a rule that, for example, a special circumstance must be 'beyond a debtor's reasonable control,' . . . or 'truly unavoidable,' . . .") with In re Lightsey, 374 B.R. 377, 381-82 (Bankr. S.D. Ga. 2007) ("The exception does not permit every conceivable unfortunate or 'unfair' circumstance to rebut the presumption of abuse, but includes only those circumstances that cause higher household expenses or adjustments of income 'for which there is no reasonable alternative,' i.e., they are unforeseeable or beyond the control of the debtor."). "[T]he plain meaning of 'special' provides some instruction to the Court that the expense or adjustment to income in question must be out of the ordinary or exceptional in some way." In re Delbecq, 368 B.R. 754, 756-57 (Bankr. S.D. Ind. 2007). A special circumstance has been described further as "one that is out of the ordinary for an average family and leaves the debtor with no reasonable alternative but to incur the expense," Armstrong, 2007 WL 1544591, at *2, or "one that, if the debtor is not permitted to adjust her income or expenses accordingly, results in a demonstrable economic unfairness prejudicial to the debtor," Knight, 370 B.R. at 437.

### C. Arguments of the Parties

In the Debtor's view the mere fact that she is required to make monthly payments of $170.00 per month on the nondischargeable Student Loan constitutes "special circumstances"

within the meaning of § 707(b)(2)(B)(i).  The Debtor argues that there is no reasonable alternative to paying the Student Loan each month as she has no ability to pay the Student Loan in full, she has no basis for seeking further deferral of the loan, and she already has consolidated her educational debt.  According to the Debtor, the federal government encourages students to borrow money to fund a college education, and it expects such loans to be repaid, excepting them from discharge in bankruptcy in most cases.  The Debtor contends it is the nature of the Student Loan itself that is special, making § 707(b)(2)(B)(i) applicable.  Additionally, the Debtor suggests that no purpose would be served by requiring dismissal of her case as an abusive filing because she likely would convert her case to chapter 13.  In chapter 13, the funds available under a plan for her non-student loan, general unsecured creditors would be negligible, according to the Debtor, as the administrative expenses of a chapter 13 case would be higher than those in a chapter 7 case and the Student Loan creditor would receive the bulk of any funds paid out in a chapter 13 plan in any event.

The UST disputes the Debtor's contentions.  According to the UST, the Debtor has failed to demonstrate how circumstances giving rise to the Student Loan qualify as special or how they differ from the "general financial problems that precede almost every bankruptcy filing." Turner, 376 B.R. at 379.  In the UST's view, the examples of special circumstances listed in the statute, i.e., a serious medical condition or a call to armed services, demonstrate that the phrase means more than just ordinary financial struggles.  In addition, the UST further challenges the notion that a debt's status as nondischargeable should govern whether a particular expense constitutes "special circumstances."  According to the UST, Congress could have included nondischargeable debt as a deductible expense under the means test but it did not.  See Lightsey, 374 B.R. at 382 n.3.

**D. Analysis**

To date, the courts considering the issue of whether the presumption of abuse can be rebutted under the provision of § 707(b)(2)(B), on the basis of student loan debt, have reached different results. Several courts have held that student loans do constitute special circumstances. Robinette, 2007 WL 2955960, at *4 ("The Court agrees with the cases that have found these expenses to be special circumstances, because there is no reasonable alternative to making the payments"); Martin, 371 B.R. at 356 (deciding that the existence of student loan debt "is a distinct, particular, additional, and extra factor which this Court should consider in determining whether abuse exists here" and concluding that the student loan debt was a "special circumstance"); Knight, 370 B.R. at 438-39 (ruling the unique characteristics of student loan debt may qualify it as a special circumstance warranting its inclusion as an expense and deduction from a debtor's projected disposable income in chapter 13 as such debt is nondischargeable and is incurred due to the high cost of education and as a result of public policy that encourages the pursuit of education by providing loans to students); Delbecq, 368 B.R. at 761-62 (indicating that the debtor did not have a meaningful ability to repay her debts outside of bankruptcy or under chapter 13 because of her student loan and therefore she had rebutted the presumption of abuse by demonstrating special circumstances); Haman, 366 B.R. at 318 (concluding the debtor had no reasonable alternative but to incur the monthly expense for her son's student loan obligation); Templeton, 365 B.R. at 216-17 (ruling the debtors had no reasonable alternative other than to pay the student loans as they are nondischargeable and therefore the debtors rebutted the presumption of abuse).

Other courts have concluded that student loans do not fall within the special circumstances provision. Vaccariello, 375 B.R. at 814-15 (deciding the debtors failed to meet

the requirement of § 707(b)(2)(B)(ii)(II) to provide "a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable" and further stating the court "is not persuaded that merely because a debt is not dischargeable it can or should constitute a special circumstance"); Lightsey, 374 B.R. at 381 n.3 ("I reject the notion that student loan payment obligations can be utilized to adjust a debtor's expenses upward to reduce net income and avoid the means test threshold because they are non-dischargeable debts.").

In this Court's view, the Debtor's Student Loan should not be included as an additional expense on the Means Test Form. The examples in § 707(b)(2)(B)(i), which provide guidance as to what may constitute special circumstances, do not identify specific expenses, but rather identify some circumstances that give rise to such expenses. Turner, 376 B.R. at 378. It is not the obligation to repay a loan itself that qualifies such an expense as a special circumstance under § 707(b)(2)(B)(i), but rather it is the circumstances that lead to incurring a loan that must be special and justify the inclusion of this additional expense item in the means test, as long as the debtor has no reasonable alternative but to make monthly payments on such loan. Eisen, 370 B.R. at 773. For that reason, the Court shall focus on the reasons the Debtor borrowed money for her education and incurred the Student Loan debt. See Turner, 376 B.R. at 379.

Educational loans incurred in pursuit of education and training that is necessitated by permanent injury, disability or an employer closing might constitute special circumstances because such events are outside the control of a debtor as are the two examples in the statute. However, the Court need not explore such questions in this case. Here, the Debtor provided no evidence as to any special circumstances that caused her to borrow money to fund her education. Rather, the record before the Court supports a finding that the Debtor incurred the Student Loan

in the ordinary course of acquiring her education and without any special circumstances.  See Vaccariello, 375 B.R. at 816.

Payments on student loans, business loans or equipment loans, incurred solely to secure a more advantageous income or to enter a different vocation, are not special circumstances. Similar to retirement plan loans, which some courts find do not satisfy the special circumstance provision, the Student Loan payments in this case are neither extraordinary nor rare.  See Eisen, 370 B.R. at 773.  Without more, a situation as common as borrowing money to fund an education cannot be a "special circumstance" within the statutory meaning of the term.  See id.; Vaccariello, 375 B.R. at 816 ("Similarly, funding higher education through the use of student loans is becoming ubiquitous.  It cannot be argued that having a student loan is rare or unusual; therefore, Debtors' obligation to repay their student loans, standing alone, cannot constitute special circumstances.")

In addition to the lack of special circumstances demonstrated by the Debtor in this particular case, the Court further finds that the nondischargeable nature of the Student Loan cannot constitute special circumstances.

> If non-dischargeability was the standard for a special circumstance, Congress would have said so.  Those courts concluding that "special circumstances" include non-dischargeable student loan obligations arguably will have to apply this standard to every other non-dischargeable obligation from long-term auto lease payments that exceed the IRS standards . . . to debts arising from fraud, embezzlement, DUI, and the like.  Every one of these non-dischargeable obligations could qualify as debts for which a debtor has no reasonable alternative but to continue payments to avoid economic harm, and there is no suggestion in Section 707(b)(2)(B) that courts have been delegated the policy decision of deciding that some non-dischargeable debts are "good" and some are "bad" so as to permit treating some but not all as a "special circumstance."
>
> The premise that educational loans are a "special circumstance" for which there is no alternative but to raise a debtor's expenses by a sufficient amount to escape the means test presumption, in order to avoid long-term economic harm, is misplaced.

> Student loan repayments are authorized by Code-based provisions that authorize debtors to maintain regular student loan payments as part of a Chapter 13 plan and avoid the perceived economic hardships recited by Knight and Delbecq. . . . Chapter 13 repayment provides the "reasonable alternative" to engaging in a strained reading of what constitutes a special circumstance in order to adjust the income or expense calculations of the means test.

Lightsey, 374 B.R. at 381 n.3 (citations omitted).

In this district, student loan debts may be paid directly and separately during a debtor's chapter 13 plan in accordance with § 1322(b)(5) as long as payments are to maintain and keep current long-term student loan debt, i.e., loans that mature after plan completion, with no acceleration of that debt. In re Chandler, 210 B.R. 898, 904 (Bankr. D.N.H. 1997). The Court acknowledges that this may not be the rule in other jurisdictions. See, e.g., Marshall v. Belda (In re Belda), 315 B.R. 477 (N.D. Ill. 2004) (denying confirmation of a sixty-month plan on the basis of "unfair discrimination" wherein the Debtor would cure his prepetition defaults on long-term student loan debt and continue to make regular monthly payments on his student loans outside his plan, which would result in a 62% dividend to the student loan creditor over the life of the plan and a dividend of only 10% to other unsecured creditors); In re Simmons, 288 B.R. 737 (Bankr. N.D. Tex. 2003) (concluding that the debtors' thirty-sixth-month plan, under which a student loan creditor would receive a 65.5% dividend outside the plan while other general unsecured creditors would receive only a 6.35% return, was unfairly discriminatory and could not be confirmed, as not providing other general unsecured creditors with dividends to which they would otherwise have been entitled if there were no such discrimination); In re Colley, 260 B.R. 532 (Bankr. M.D. Fla. 2000) (indicating a plan discriminates unfairly under § 1322(b)(2) and may not be confirmed if it provides for full contractual payments on a student loan creditor's claim while also providing for a lower percentage of other unsecured creditors' claims to be paid

off through pro rata distribution). Therefore, the Debtor's argument that she has no reasonable alternative to paying the Student Loan is unavailing because she could, at least in part, pay it through a chapter 13 proceeding.

The Debtor argues that the Court should examine what might happen if the Debtor were to convert to chapter 13 in determining the existence of special circumstances, contending the dividend to non-student loan, unsecured creditors will be negligible. The Court does not believe that it should engage in the type of analysis advocated by the Debtor in determining special circumstances under § 707(b)(2)(B)(i) as this would involve hypothetical postpetition events and the analysis of a chapter 13 plan that has yet to be filed with the Court. See In re Ries, 377 B.R. 777, 783 (Bankr. D.N.H. 2007) (explaining that the mechanical test of § 707(b)(2)(A) does not allow for consideration of postpetition events); In re Hartwick, 359 B.R. 16, 21 (Bankr. D.N.H. 2007) (stating "consideration of postpetition developments in the application of the means test would be contrary to Congressional intent as expressed in the amendments to § 707(b)" and concluding that courts must examine the circumstances that exist on the petition date in applying the means test). Consideration of the possible dividend in any hypothetical chapter 13 plan as part of determining the existence of substantial abuse under the chapter 7 means test would require the Court to determine a chapter 7 debtor's hypothetical "projected disposable income" in order to determine whether a hypothetical chapter 13 plan would be confirmable. See 11 U.S.C. § 1325(b)(1)(B). Such a determination is inconsistent with the statutory mandate that the chapter 7 means test is based upon a snapshot of a debtor's financial circumstances on the petition date in comparison to the debtor's disposable income over the previous six months, Ries,

377 B.R. at 783, as distinguished from the determination of the debtor's "projected disposable income" anticipated in the future, during the term of a chapter 13 plan, id. at 786-87.[3]

Because the Debtor filed chapter 7 bankruptcy, the Court must limit its examination to the Debtor's circumstances under § 707(b)(2)(B) as of the petition date to determine whether she has overcome her burden in rebutting the presumption of abuse in this case. See Johns, 342 B.R. at 629; see also Haman, 366 B.R. at 317-18 (discussing whether conversion to chapter 13 is a "reasonable alternative" within the meaning of § 707(b)(2)(B)(i) and stating that "[c]alculations under the means test have been purposefully circumscribed by Congress and should not include future or foreseeable circumstances, including what could or would happen to a debtor's income and expenses in a case under chapter 13. If the means test includes these circumstances, it would no longer act as a mere 'mathematical estimate' using the income and expense figures provided for on Form B22A, but rather, would necessitate a review of a proposed chapter 13 plan."). The Court need not determine what possible return the Debtor's unsecured creditors might receive in chapter 13. See Johns, 342 B.R. at 629 ("The potential payback of zero percent to unsecured creditors in a Chapter 13 is not a special circumstance contemplated under § 707(b)(2)(B).").[4]

The record demonstrates that the Debtor borrowed money to fund her education in the ordinary course. The Debtor has not demonstrated that the circumstances giving rise to the Student Loan were special in any way or that any unique factors in her case would justify an

---

[3] In addition, the Debtor appears to be inviting the Court to formulate a hypothetical chapter 13 plan for the Debtor, evaluate the Debtor's "projected disposable income" for a hypothetical confirmation, and then evaluate the level of return to creditors, all without notice and a hearing. See 11 U.S.C. § 1325(b)(1). The Court declines any such invitation.

[4] This is not to say, however, that a debtor may not complete such an analysis and argue that it is relevant to the separate "reasonable alternative" analysis required by § 707(b)(2)(B)(i) as noted by the Lightsey court. 374 B.R. at 381 n.3. Such an argument may well be material if the amount of a debtor's monthly student loan payment exceeded her monthly projected disposable income.

expense adjustment to her current monthly income for the Student Loan on the Means Test Form.  The Debtor's obligation to repay the Student Loan, standing alone, does not constitute special circumstances.  The fact that unsecured creditors might receive a minimal dividend in a hypothetical chapter 13 plan is not relevant to the determination of special circumstances under the Bankruptcy Code.  Chapter 13 plans that provide <u>de minimis</u> dividends to unsecured creditors are neither barred from confirmation under the Bankruptcy Code nor by the practice in this district.

## IV. CONCLUSION

For the reasons set forth above, the Court concludes the Debtor has not rebutted the presumption of abuse under § 707(b)(2)(A)(i) as the Debtor has not established special circumstances within the meaning of § 707(b)(2)(B)(i) warranting the inclusion of the Student Loan as a deductible expense, which would cause the Debtor's monthly disposable income to fall below the threshold amount establishing abuse under § 707(b)(2)(A)(i).  Accordingly, the Court shall issue a separate order consistent with this opinion granting the UST's Motion seeking dismissal under § 707(b)(2), denying as moot the UST's Motion seeking dismissal under § 707(b)(3), and providing the Debtor with an opportunity to convert her case to chapter 13 if she chooses.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

ENTERED at Manchester, New Hampshire.

Date:   February 21, 2008                    /s/ J. Michael Deasy
                                             J. Michael Deasy
                                             Bankruptcy Judge